55

1 | Michael J. Gomez (State Bar No. 251571)
    mgomez@frandzel.com
2 | Paige S. Poupart (State Bar No. 343547)
    ppoupart@frandzel.com
3 | FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard, Nineteenth Floor
4 | Los Angeles, California 90017-2427
   Telephone: (323) 852-1000
5 | Facsimile: (323) 651-2577

6 | Attorneys for Plaintiff
   FARM CREDIT SERVICES OF AMERICA,
7 | PCA

8

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **EASTERN DISTRICT OF CALIFORNIA**

11 | **FRESNO DIVISION**

| | |
|---|---|
| 12 | In re | Case No. 24-12751 |
| 13 | BIKRAM SINGH and HARSIMRAN KAUR SANDHU, | Chapter 11 |
| 14 | | Adversary Proceeding No. |
| 15 | Debtors and Debtors-in-Possession. | |
| 16 | | |
| 17 | FARM CREDIT SERVICES OF AMERICA, PCA, | **COMPLAINT BY FARM CREDIT SERVICES OF AMERICA, PCA FOR:** |
| 18 | Plaintiff, | **1. Determination that Debts Are Nondischargeable Under 11 U.S.C. § 523(a)(6).** |
| 19 | v. | Hon. René Lastreto II |
| 20 | BIKRAM SINGH and HARSIMRAN KAUR SANDHU, | |
| 21 | Defendants. | |

22

23

24

25

26

27

28

Farm Credit Services of America, PCA complains and alleges as follows:

**JURISDICTION AND VENUE**

1.      Defendants and Debtors Bikram Singh ("Singh") and Harsimran Kaur Sandhu ("Kaur") (collectively, the "Debtors") filed a voluntary chapter 11 petition for relief under Title 11 of the United States Code on September 22, 2024, commencing the instant bankruptcy case.

2.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1334 and 157. The matters alleged in this Complaint are "core" matters pursuant to 28 U.S.C. § 157(b)(2)(I). Plaintiff consents to this Court's entry of final judgment in this matter, as this Court has the power to enter final orders regarding such matters.

3.      The venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**PARTIES**

4.      Plaintiff Farm Credit Services of America, PCA is and at all times mentioned herein was, an entity formed pursuant to the Farm Credit Act, an instrumentality of the United States of America with its principal place of business in Omaha, Nebraska ("Plaintiff or "FCSAmerica"), and is exempt from the usury provisions of Article XV, Section 1 of the California Constitution.

5.      Plaintiff is informed and believes and thereon alleges that at all relevant times Defendant Debtors Bikram Singh ("Singh"), was and still is an individual residing in the County of Madera, State of California, and doing business in the residing in the City of Madera, County of Madera, State of California.  Plaintiff is further informed and believes, and thereon alleges, that at all relevant times, Singh was and still is a 100% owner of Arjun Farms, Inc. ("Arjun"), a California corporation, NIA Ag Solutions ("NIA"), a California corporation, and 20% owner of Friends Farm Inc. ("Friends"), a California corporation, as well an officer and a director of Arjun, NIA, and Friends.

6.      Plaintiff is informed and believes and thereon alleges that at all relevant times Defendant Debtor Harsimran Kaur Sandhu ("Kaur") was and still is an individual residing in the County of Madera, State of California, and is Singh's spouse.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**GENERAL ALLEGATIONS**

7.     The following factual allegations form the background for and basis of Plaintiff's claims for relief against the Debtors.

**Contract 1**

8.     Singh and his related entities, entered into a Retail Installment Contract and Security Agreement on or about April 29, 2022, wherein Singh and the entities were the buyers and Midland Tractor Company ("Midland") of 1901 W Cleveland Ave., P.O. Box 1227, Madera, California 93637, was the seller ("Contract 1"). Under Contract 1, FCSAmerica is identified and defined as the "Finance Company" and the servicer of the contract with full right and authority in the place and stead of the seller, in the name of the seller, or in its own name to enforce any and all rights and remedies under Contract 1. A true and correct copy of Contract 1 is attached is attached hereto as **Exhibit 1.**

9.     Under Contract 1, Singh and the entities purchased, as amended by Amendment to Contract 1 as set forth below, the following items (collectively, the "Contract 1 Collateral"):

| Make | Model | Description | Serial No. |
|------|-------|-------------|-----------|
| Rears | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8919 |
| Rears | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8921 |
| John Deere | 5125ML | Tractor | 1LV5125MVNM702911 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8636 |
| COE | S7R | Tree Shaker | S7R+-21-777 |
| COE | S7R | Tree Shaker | S7R+-21-778 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8637 |
| John Deere | 5125ML | Tractor | 1LV5125MLNM702779 |
| Key Dollar | PF9 | Cab | 9357 |
| Key Dollar | PF9 | Cab | 9359 |

| Flory | 860XL | Nut Harvester: Pull-Type | 8692 |
| Jackrabbit | WEDGE 10 | Reservoir Cart | 1643 |
| Exact | E355 | Conditioner | 9383 |

10. Subsequently, on or about June 23, 2022, Singh and his related entities and Plaintiff executed an Amendment to Retail Installment Contract and Security Agreement ("Amendment to Contract 1") which provides, among other things, that Singh and his related entities acknowledged that the Contract 1 Collateral shall be located at 18140 Road 20, Madera, California 93637, and which amended the equipment purchased by substituting some of the items. A true and correct copy of the Amendment to Contract 1 is attached hereto as **Exhibit 2** and incorporated herein by this reference.

11. In connection with Contract 1, FCSAmerica was granted a continuing security interest in the Contract 1 Collateral, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto as more particularly described and stated in the Contract 1.

12. FCSAmerica holds a perfected security interest in the Contract 1 Collateral represented by a UCC-1 financing statement, which was filed with the Secretary of State of California, File No. U220189040728, on April 30, 2022, and three UCC financing statement amendments, which were filed with the Secretary of State of California as File Nos. U220193481031, U220201996832, U220205867227 on May 9, 2022, June 6, 2022, and June 24, 2022, respectively (together, the "Contract 1 UCC-1"). A true and correct copy of the Contract 1 UCC-1 is attached hereto as **Exhibit 3** and incorporated herein by this reference.

### Contract 2

13. On or about May 26, 2022, Singh and his related entities entered into a Retail Installment Contract and Security Agreement wherein they were the buyers and Midland, was the seller (the "Contract 2"). Under Contract 2, FCSAmerica is identified and defined as the "Finance Company" and the servicer of the contract with full right and authority in the place and stead of the seller, in the name of the seller, or in its own name to enforce any and all rights and remedies

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

under the Contract 2. A true and correct copy of the Contract 2 is attached hereto as **Exhibit 4** and incorporated herein by this reference.

14.     Under the Contract 2, Singh and his related entities purchased, as amended by Amendment to Contract 2 as set forth below, the following items (collectively, the "Contract 2 Collateral"):

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Jackrabbit | 36/36 STOCK PILING | Elevator | YD82 |
| Jackrabbit | 180 | Shuttle | JRT1484 |
| Jackrabbit | 180 | Shuttle | JRT15000 |
| Jackrabbit | 180 | Shuttle | JRT1495 |

15.     Subsequently, on or about August 26, 2022, Singh and his related entities and Plaintiff executed an Amendment to Retain Installment Contract and Security Agreement ("Amendment to Contract 2") which provides, among other things, that Singh and his related entities acknowledged that the Collateral 2 Collateral shall be located at 18140 Road 20, Madera, California 93637, and which amended the equipment purchased by substituting one of the items. A true and correct copy of the Amendment to Contract 2 is attached hereto as **Exhibit 5** and incorporated herein by this reference.

16.     FCSAmerica holds a perfected its security interest in the Contract 2 Collateral represented by a UCC-1 financing statement, which was filed with the Secretary of State of California, File No. U220198381741, on May 31, 2022, and two UCC financing statement amendments, which were filed with the Secretary of State of California as File Nos. U220225321728, U230014257222, on September 2, 2022, and February 28, 2023, respectively (together, the "Contract 2 UCC-1").  A true and correct copy of the Contract 2 UCC-1 is attached hereto as **Exhibit 6** and incorporated herein by this reference.

### Contract 3

17.     On or about November 17, 2022, Friends and Singh, as the buyers, and Midland Tractor Company, as the seller, entered into a Retail Installment Contract and Security Agreement

("Contract 3"). Under Contract 3, FCSAmerica is identified and defined as the "Finance Company" and the servicer of the contract with full right and authority in the place and stead of the seller, in the name of the seller, or in its own name to enforce any and all rights and remedies under Contract 3. A true and correct copy of Contract 3 is attached hereto as **Exhibit 7** and incorporated herein by this reference.

18.     Under Contract 3, Singh and Friends purchased the following equipment (collectively, "Contract 3 Collateral" and together with the Contract 1 Collateral and Contract 2 Collateral, the "Collateral"):

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| T.G. Schmeiser | VBL-16R | Blade | VB9931-22 |
| T.G. Schmeiser | VBL-13R | Blade | VB3063-21 |
| T.G. Schmeiser | VBL-13R | Blade | VB3064-21 |
| Jackrabbit | Co-Jack | Rodent Control System | CJ391 |

19.     FCSAmerica holds a perfected its security interest in the Contract 3 Collateral represented by a UCC-1 financing statement, which was filed with the Secretary of State of California, File No. U220245887237, on November 21, 2022 ("Contract 3 UCC-1"). A true and correct copy of the Contract 3 UCC-1 is attached hereto as **Exhibit 8** and incorporated herein by this reference.

### Defaults and Demand

20.     Throughout 2023 Singh and his related entities defaulted on the contracts, and except for the Contract 3 Collateral, Plaintiff demanded return of its collateral.  In 2024, Plaintiff demanded the return of the Contract 3 Collateral.

### Conversion

21.     Despite demand, the Debtors and their related entities failed to turn over the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Collateral and any proceeds of the Collateral. The Debtors, as the officers and/or directors and/or persons in control of their entities, personally caused this to occur with respect to their entities.

22.      To the extent the Collateral has been sold, the Debtors converted the collateral sale proceeds for their own use, dissipating those proceeds. The Debtors have not paid any of the proceeds from the sale of collateral to Plaintiff. At the time of the dissipation of the collateral sale proceeds, the Debtors were actually aware that such dissipation would cause harm to Plaintiff.

<strong>Madera County Action</strong>

23.      On December 4, 2023, FCSAmerica filed an action in the Madera County Superior Court alleging six causes of actions for Contract 1 and Contract 2, including but not limited to breach of contract, claim and delivery and conversion.

24.      On July 11, 2024 the Madera County Superior Court entered a judgment in the amount of $1,924,593.62 against Singh and others and in favor of FCSAmerica in that certain action styled *Farm Credit Services Of America, PCA, v. NIA Ag Solutions, a California corporation, et. al.*, Court of California, case No. MCV090863 ("Judgment"). A true and correct copy of the Judgment is attached to hereto as **Exhibit 9**.

25.      The Judgment provides, among other things, that FCSAmerica is entitled to immediate possession of, among other things, Contract 1 Collateral and Contract 2 Collateral (collectively, "Judgement Collateral").

26.      The Judgment further provides that FCSAmerica is entitled to sell the Judgment Collateral and apply the proceeds toward payment of the Judgment.

<strong>The Debt</strong>

27.      As of September 22, 2024, Singh and his related related entities, owe FCSAmerica not less than $1,924,593.62, on the Judgment plus interest and attorneys' fees and costs incurred since the entry of the Judgment, plus such other amounts accruing thereafter in amounts according to proof.

28.      Pursuant to Contract 3, as of September 22, 2024, not including fees and costs, Singh and Friends owe Plaintiff $50,374.58 (together with the amounts in paragraph 27, the "Debt").

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**The Bankruptcy Case**

29.    On September 22, 2024, the Debtors filed a voluntary chapter 11, bankruptcy petition, commencing the instant bankruptcy case. (Dkt. 1.)

## CLAIM FOR RELIEF

**For Determination that the Debt is Nondischargeable**

**Under 11 U.S.C. § 523(a)(6)**

30.    Plaintiff incorporates by reference and realleges its allegations in paragraphs 1 through 29 above, as if fully set forth in this paragraph.

31.    Plaintiff is informed and believes, and thereon alleges, that the Debtors are hiding the Collateral from Plaintiff for their own use and/or have sold the Collateral and dissipated the collateral proceeds. The Debtors know they have to turn over the Collateral and/or any collateral proceeds but the Debtors fail to do so despite demands from Plaintiff, which acts constitute a willful and malicious injury to Plaintiff.

32.    Plaintiff is informed and believes, and thereon alleges, that the Debtors are engaged in a scheme to conceal and/or dissipate the Collateral (or its proceeds) to the detriment of Plaintiff in an effort to convert the Collateral and the proceeds for the Debtors' own personal use, all of which constitute a willful and malicious injury to Plaintiff. Debtors' actions in concealing, converting, liquidating, transferring, assigning, and selling Collateral (or its proceeds) were all done while they had actual knowledge that the very same Collateral was subject to Plaintiff's security interests.

33.    The Debtors' actions were all done deliberately and with the intent either to specifically cause Plaintiff harm or at least with Debtors' knowledge and substantial certainty that their actions would cause harm to Plaintiff.

34.    The Debtors' actions were all done without any just cause, justification, or excuse.

35.    Plaintiff has been and will continue to be injured by the Debtors' actions.

36.    As a result of the foregoing, Plaintiff was harmed in an amount according to proof, but not less than the full amount of the Debt.

37.    Plaintiff is entitled to entry of judgment against the Debtors, jointly and severally,

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  determining that the full amount of the Debt is deemed to be nondischargeable under 11 U.S.C.

2  § 523(a)(6).

3                                  **PRAYER FOR RELIEF**

4         WHEREFORE, Plaintiff pray for the following:

5         1.      For a nondischargeable money judgment against the Debtors and in favor of

6  Plaintiff in the amount of:

7                  a.      Plaintiff's outstanding claims which are not less than $1,974,968.20; plus

8                  b.      interest, including interest at the legal rate since September 22, 2024, in an

9  amount according to proof; plus

10                 c.      attorney's fees and costs as part of the Debtors' bankruptcy pursuant to,

11  among other things, California Penal Code section 496(c); plus

12                 d.      attorneys' fees and costs including, but not limited to, in connection with

13  the prosecution of this matter pursuant to, among other things, California Penal Code section

14  496(c); plus

15                 e.      costs of recovering the Collateral; and

16                 f.      treble damages pursuant to California Penal Code section 496(c).

17        2.      For a determination that such nondischargeable money judgment is

18  nondischargeable under 11 U.S.C. § 523(a)(6), respectively.

19        3.      For such other and further relief as the Court deems proper.

20

21  DATED:  December 26, 2024          FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                        MICHAEL J. GOMEZ
22                                      PAIGE S. POUPART

23

24
                                        By:  ___/s/ Michael J. Gomez_____
25                                          MICHAEL J. GOMEZ
                                            Attorneys for Plaintiff
26                                          FARM CREDIT SERVICES OF AMERICA,
                                            PCA
27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1

Customer No.: [redacted]  .  Contract No.: [redacted] 9571  Date: April 29, 2022

FORM 8422 (10-2019)
DocuSign Envelope ID: C27F

## *AgDirect*®

### RETAIL INSTALLMENT CONTRACT
### AND SECURITY AGREEMENT ("Contract")

| BUYER ("Buyer") | |
|---|---|
| NIA Ag Solutions, a Corporation<br>18140 Road 20<br>Madera, CA 93637 | State of Organization:  California<br>Organization ID:  3835563<br>Organization Type:  Corporation |
| Bikram Singh<br>18144 Road 20<br>Madera, CA 93637 | Principal Residence:  California<br>Organization ID:  Not Applicable<br>Organization Type:  Individual |
| Arjun Farms, Inc., a Corporation<br>18144 Road 20<br>Madera, CA 93637 | State of Organization:  California<br>Organization ID:  4758025<br>Organization Type:  Corporation |
| Friends Farm Inc., a Corporation<br>18144 Road 20<br>Madera, CA 93637 | State of Organization:  California<br>Organization ID:  4249376<br>Organization Type:  Corporation |

| SELLER ("Seller") |
|---|
| Midland Tractor Company<br>1901 W Cleveland Ave, PO Box 1227<br>Madera, CA 93639 |

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

| EQUIPMENT DESCRIPTION ("Equipment") | | | |
|---|---|---|---|
| **Make** | **Model** | **Description** | **Serial No.** |
| Air-O-Fan | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8919 |
| Air-O-Fan | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8921 |
| John Deere | 5125ML | Tractor | 1LV5125MVNM702911 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8636 |
| COE | S7R | Tree Shaker | S7R+-21-777 |
| COE | S7R | Tree Shaker | S7R+-21-778 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8637 |
| John Deere | 5125ML | Tractor | 1LV5125MLNM702779 |
| Key Dollar | PF9 | Cab | 9357 |
| Key Dollar | PF9 | Cab | 9359 |
| T.G. Schmeiser | VBL-11R | Leveler | 9384 |
| Flory | 860XL | Nut Harvester: Pull-Type | 8692 |
| Jackrabbit | WEDGE 10 | Reservoir Cart | 1643 |
| Exact | E355 | Conditioner | 9383 |

| EQUIPMENT LOCATION ("Equipment Location") |
|---|
| Equipment is or will be located at the address first listed above or on the following described real estate (if any). |

| STATEMENT OF COST | | | | |
|---|---|---|---|---|
| 1. | Cash Sale Price | 1. | 1,292,300.00 | |
| 2. | Sales Tax, if any | 2. | 35,546.50 | |
| **3.** | **TOTAL CASH PRICE (1 + 2)** | **3.** | **1,327,846.50** | |
| 4. | Cash Down Payment | 4. | 260,000.00 | |
| 5. | Net Trade In Allowance | 5. | .00 | |
| **6.** | **TOTAL DOWN PAYMENT (4 + 5)** | **6.** | **260,000.00** | |
| 7. | Unpaid Cash Balance (3 − 6) | 7. | 1,067,846.50 | |
| 8. | Other Charges | | | |
| | (a) Documentation Fee | 8a. | 300.00 | |
| **9.** | **TOTAL OTHER CHARGES (8a)** | **9.** | **300.00** | |
| **10.** | **AMOUNT FINANCED (BASIC TIME PRICE) (7 + 9)** | **10.** | **1,068,146.50** | |
| **11.** | **FINANCE CHARGE (TIME-PRICE DIFFERENTIAL)** | **11.** | **128,618.45** | |
| **12.** | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (10 + 11)** | **12.** | **1,196,764.95** | |

App #: 2552867;  CIF #: [redacted]  ;  Contract #: [redacted] 9571          267CI          Legal Doc. Date: April 29, 2022
FORM 8422, Retail Installment Contract and Security Agreement          Page 1 of 6
DocuSign Envelope ID: C27F3D1B-DFFD-4E9C-8772-78C4E59FF14B

THIS IS A COPY
The Authoritative Copy of the record is held at na2.docusign.net

| ANNUAL INTEREST RATE |
|---|

Annual Interest Rate ("AIR"): 3.850

Interest rate is fixed at the AIR until maturity.

| TERMS OF PAYMENT |
|---|

**EQUAL INSTALLMENTS**
Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and Type (Each Payment) | | Begin Date | End Date |
|---|---|---|---|---|---|
| 5 | Annually | $239,352.99 | Principal & interest | 05/01/2023 | 05/01/2027 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment.  This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side).  **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**  Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price.  **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| **NOTICE TO BUYER:** | **1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.  2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT:  (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT.  3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.  4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT.  5) KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.  6) THE ADDITIONAL TERMS ARE PART OF THIS AGREEMENT.**<br><br>**NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE.** |
|---|---|

| SECURITY INTEREST |
|---|

Buyer hereby grants to Seller, together with its successors and assigns and Finance Company, a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates.  Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest.  If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer.  Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

## RETAIL INSTALLMENT CONTRACT

**Acknowledgment by Buyer(s):** Buyer(s) hereby acknowledge personal delivery of a copy of this Contract signed by the Seller.

**BUYER WAIVES ANY RIGHT TO A TRIAL BY JURY AND AGREES THAT TRIAL SHALL BE BY AND ONLY TO THE COURT.**

**Buyer(s):**

NIA Ag Solutions, A Corporation

By    *Bikram Singh*            Date:    4/29/2022
       *Bikram Singh, CEO*

Arjun Farms, Inc., A Corporation

App #: 2552867;  CIF #: ▮▮▮▮ ;  Contract #: ▮▮9571       267CI       Legal Doc. Date: April 29, 2022
FORM 8422, Retail Installment Contract and Security Agreement       Page 2 of 6
DocuSign Envelope ID: C27F3D1B-DFFD-4E9C-8772-78C4E59FF14B

The Authoritative Copy of this record is held at na2.docusign.net

DocuSigned by:

**Bikram Singh**
—7875C07E7D00404...

By _____ Date: _____4/29/2022_____

Bikram Singh, CEO

Friends Farms, Inc., A Corporation

**Bikram Singh**
—7875C07E1D00404...

By _____ Date: _____4/29/2022_____

Bikram Singh, Secretary

DocuSigned by:

**Bikram Singh**
—7875C07E1D00404...

Bikram Singh      4/29/2022

_____ Date

Seller: Midland Tractor Company

DocuSigned by:

BY: *Jan Mytych*
—74584FEDC7FF49A...

TITLE: Office Manager   DATE: 4/29/2022

---

**SELLER ASSIGNMENT**

FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA** (together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment"). Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event. "Trigger Event" means the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined). Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph. Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective. Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

Seller: Midland Tractor Company

DocuSigned by:

By: *Jan Mytych*
—74584FEDC7FF49A...

TITLE: Office Manager   DATE: 4/29/2022

App #: 2552867;  CIF #: ▮▮▮▮ ;  Contract #: ▮▮▮9571    267CI    Legal Doc. Date: April 29, 2022
FORM 8422, Retail Installment Contract and Security Agreement    Page 3 of 6
DocuSign Envelope ID: C27F3D1B-DFFD-4E9C-8772-78C4E59FF14B

THIS IS A COPY<br>Authoritative Copy of this record is held at na2.docusign.net

Buyer hereby agrees as follows:

**1. BUYER'S REPRESENTATIONS AND WARRANTIES.** Buyer represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; (l) Buyer agrees Seller or Finance Company may provide to any guarantor the current outstanding balance and payment status on this Contract; and (m) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

**2. BUYER'S WAIVERS.** To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

**3. ASSIGNMENTS.** Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (I) Finance Company may further assign this Contract without Buyer's consent and (II) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company were Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Seller will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company, it being understood that Seller shall remain liable to Buyer for any such claims. Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

**Buyer further acknowledges** each of the following: (a) Finance Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.

**4. APPOINTMENT OF FINANCE COMPANY AS SERVICER.** Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

**5. DISBURSEMENT AUTHORIZATION.** Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

**6. INSURANCE.** Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as

Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

7. **GENERAL INDEMNITY.** Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property. Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

8. **LATE PAYMENT FEE.** If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment. Time is of the essence. If any service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

9. **EVENTS OF DEFAULT.** An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder. No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

10. **REMEDIES.** Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it. If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate. The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to other any other remedy

available to Seller at law or in equity. To the extent permitted by law, Buyer hereby waives any duty which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller. If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable. Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

11. **PERFORMANCE BY FINANCE COMPANY.** If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation. The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company. Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company. This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

12. **USURY.** Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate. If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer. The Finance Charge is calculated on the number of days elapsed and a year consisting of three hundred sixty (360) days.

13. **BENEFIT.** Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several. Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

14. **SEVERABILITY.** Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

15. **ORIGINAL / TRANSMITTAL.** This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

16. **CONSENT TO ELECTRONIC COMMUNICATIONS.** Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability

THIS IS A COPY
This Authoritative Copy of this record is held at na2.docusign.net

relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known by Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

17. **USA PATRIOT ACT.** Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer. Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

18. **MISCELLANEOUS**. This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein. No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company. Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

App #: 2552867;  CIF #: ▮▮▮▮▮▮  Contract #: ▮▮9571    267CI    Legal Doc. Date: April 29, 2022
FORM 8422, Retail Installment Contract and Security Agreement    Page 6 of 6
DocuSign Envelope ID: C27F3D1B-DFFD-4E9C-8772-78C4E59FF14B

# EXHIBIT 2

FORM 8430j (7-2021)

Customer No.: ▓▓   Contract No.: ▓▓9571   Date: June 23, 2022

# AgDirect®

## AMENDMENT TO RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT

This AMENDMENT ("Amendment") to Retail Installment Contract and Security Agreement number 888435-3375971 dated April 29, 2022, and any amendments or addenda thereof ("Contract") is made and entered into on June 23, 2022, by and among the buyer(s) and/or purchaser(s) ("Buyer") designated in the Contract and Farm Credit Services of America, PCA, as servicer, ("Finance Company"). The parties hereby amend the terms of the Contract only as specified below. The terms of the Contract shall in all other respects remain in full force and effect and are made a part hereof by this reference.

**EQUIPMENT DESCRIPTION ("EQUIPMENT"):**

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Rears | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8919 |
| Rears | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8921 |
| John Deere | 5125ML | Tractor | 1LV5125MVNM702911 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8636 |
| COE | S7R | Tree Shaker | S7R+-21-777 |
| COE | S7R | Tree Shaker | S7R+-21-778 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8637 |
| John Deere | 5125ML | Tractor | 1LV5125MLNM702779 |
| Key Dollar | PF9 | Cab | 9357 |
| Key Dollar | PF9 | Cab | 9359 |
| Flory | 860XL | Nut Harvester: Pull-Type | 8692 |
| Jackrabbit | WEDGE 10 | Reservoir Cart | 1643 |
| Exact | E355 | Conditioner | 9383 |

**SECURITY INTEREST:** Buyer hereby grants to Seller, together with its successors and assigns (including but not limited to Finance Company), a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources including, but not limited to, all federal and state government farm program subsidy payments, to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

**EQUIPMENT LOCATION:** Buyer acknowledges and agrees that the equipment location ("Equipment Location") is 18140 Road 20, Madera, CA 93637.

**FEE:** The fee for this servicing action is $0.00.

**TRANSMITTAL:** This Amendment may be authenticated by a party and transmitted by facsimile or electronic media. Any authenticated copy of this Amendment which was transmitted by facsimile or electronic media shall be deemed an executed original of this Amendment.

**CERTIFICATION:** Buyer further agrees as follows:
Finance Company may adjust the payment schedule set out in said Contract and as modified by the provisions of this Amendment as needed to include any change in interest rates; any change in amounts advanced, extended, deferred, or reamortized; or any change in any other provision of said Contract and any change in the amounts outstanding may, at Finance Company's option, be added to the principal balance owing on said Contract and will accrue interest at the interest rate and terms set out in the Contract; Except as specifically modified by this Amendment, all terms, conditions, covenants, warranties, and provisions of said Contract and any amendments or addenda thereto, and any other document(s) or instrument(s) evidencing either the indebtedness or property given as collateral for the same remain in full force and effect and are hereby ratified and confirmed;
To provide Finance Company on request with financial information in a format acceptable to Finance Company;
That the rights of all parties executing any documents specified above but not executing this Amendment are reserved; and
That failure to pay any amounts or to otherwise comply with the terms and conditions specified above may be treated as a default under the original Contract.

**CONSENT TO ELECTRONIC COMMUNICATIONS.** Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known by Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

Buyer certifies that ALL the information provided by Buyer to Finance Company is true and correct.

# EXHIBIT 3

U220189040728



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| :---: |
| **-FILED-** |
| File No.: U220189040728 |
| Date Filed: 4/30/2022 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 |
| | GLENDALE, CA 912099071 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| BIKRAM SINGH | 18144 ROAD 20<br>MADERA, CA 93637 |
| FRIENDS FARM INC. | 18144 ROAD 20<br>MADERA, CA 93637 |
| ARJUN FARMS, INC. | 18144 ROAD 20<br>MADERA, CA 93637 |
| NIA AG SOLUTIONS | 18140 ROAD 20<br>MADERA, CA 93637 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| FARM CREDIT SERVICES OF AMERICA, PCA | PO BOX 2409<br>OMAHA, NE 68103 |
| MIDLAND TRACTOR COMPANY | 1901 W CLEVELAND AVE<br>PO BOX 1227<br>MADERA, CA 93639 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
Key Dollar PF9 Cab 9357 Key Dollar PF9 Cab 9359 T.G. Schmeiser VBL-11R Leveler 9384 John Deere 5125ML Tractor 1LV5125MLNM702779 John Deere 5125ML Tractor 1LV5125MVNM702911 Air-O-Fan GB38R 1200 GALLON Orchard Sprayer: Pull-Type 8919 Air-O-Fan GB38R 1200 GALLON Orchard Sprayer: Pull-Type 8921 Jackrabbit WEDGE 10 Reservoir Cart 1643 COE S7R Tree Shaker S7R+-21-777 COE S7R Tree Shaker S7R+-21-778 Exact E355 Conditioner 9383 Flory 860XL Nut Harvester: Pull-Type 8692 Flory V62 Nut Sweeper: Self-Propelled 8636 Flory V62 Nut Sweeper: Self-Propelled 8637

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
86277934

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS

For Office Use Only

**-FILED-**

File No.: U220205867227

Date Filed: 6/24/2022

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

14060 - FARM CREDIT

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

87275900

CALI

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| U220189040728   4/30/2022   SS CA | (or recorded) in the REAL ESTATE RECORDS<br>For: attach Amendment Addendum (Form UCC3Ac) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:

☐ This Change affects ☐ Debtor **or** ☐ Secured Party of record

**AND** Check **one** of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☒ **COLLATERAL CHANGE:**  Also check **one** of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☒ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:
Rears GB38R 1200 GALLON Orchard Sprayer: Pull-Type 8919
Rears GB38R 1200 GALLON Orchard Sprayer: Pull-Type 8921
John Deere 5125ML Tractor 1LV5125MVNM702911
Flory V62 Nut Sweeper: Self-Propelled 8636
COE S7R Tree Shaker S7R+-21-777
COE S7R Tree Shaker S7R+-21-778
Flory V62 Nut Sweeper: Self-Propelled 8637
John Deere 5125ML Tractor 1LV5125MLNM702779

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA | | | |
| OR | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. **OPTIONAL FILER REFERENCE DATA:**  Debtor Name: Singh, Bikram

| 87275900 | 267 | 3379571888435 |
|---|---|---|

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

**11. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
U220189040728   4/30/2022   SS CA

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT**· Same as item 9 on Amendment form

**12a ORGANIZATION'S NAME**
FARM CREDIT SERVICES OF AMERICA, PCA

OR

**12b INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)**          **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**13.** Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| 13a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):**
1) Midland Tractor Company

Key Dollar PF9 Cab 9357
Key Dollar PF9 Cab 9359
Flory 860XL Nut Harvester: Pull-Type 8692
Jackrabbit WEDGE 10 Reservoir Cart 1643
Exact E355 Conditioner 9383

**15.** This FINANCING STATEMENT AMENDMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**17.** Description of real estate:

**16.** Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

**18. MISCELLANEOUS:** 87275900-CA-0 · 14060 - FARM CREDIT SERVICES     FARM CREDIT SERVICES OF     File with: Secretary of State, CA     257   3379571888435

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

<table>
<tr><td colspan="2">

**For Office Use Only**

**-FILED-**

File No.: U220193481031

Date Filed: 5/9/2022

</td></tr>
</table>

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    14060 - FARM CREDIT

```
Lien Solutions                          86404652
P.O. Box 29071
Glendale, CA 91209-9071                 CALI
```

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
U220189040728   4/30/2022   SS CA

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:           **AND** Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

<table>
<tr><td>6a. ORGANIZATION'S NAME</td><td></td><td></td><td></td></tr>
<tr><td>OR 6b. INDIVIDUAL'S SURNAME</td><td>FIRST PERSONAL NAME</td><td>ADDITIONAL NAME(S)/INITIAL(S)</td><td>SUFFIX</td></tr>
</table>

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

<table>
<tr><td colspan="4">7a. ORGANIZATION'S NAME</td></tr>
<tr><td colspan="4">OR 7b. INDIVIDUAL'S SURNAME</td></tr>
<tr><td colspan="4">INDIVIDUAL'S FIRST PERSONAL NAME</td></tr>
<tr><td colspan="3">INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)</td><td>SUFFIX</td></tr>
<tr><td>7c. MAILING ADDRESS</td><td>CITY</td><td>STATE POSTAL CODE</td><td>COUNTRY</td></tr>
</table>

**8.** ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☒ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:
Air-O-Fan GB38R 1200 GALLON Orchard Sprayer: Pull-Type 8919
Air-O-Fan FB38R 1200 GALLON Orchard Sprayer: Pull-Type 8921
John Deere 5125ML Tractor 1LV5125MVNM702911
Flory V62 Nut Sweeper: Self-Propelled 8636
COE S7R Tree Shaker S7R+-22-898
COE S7R Tree Shaker S7R+-33-894
Flory V62 Nut Sweeper: Self-Propelled 8637
John Deere 5125ML Tractor 1LV5125MLNM702779

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

<table>
<tr><td>9a. ORGANIZATION'S NAME<br>FARM CREDIT SERVICES OF AMERICA, PCA</td><td></td><td></td><td></td></tr>
<tr><td>OR 9b. INDIVIDUAL'S SURNAME</td><td>FIRST PERSONAL NAME</td><td>ADDITIONAL NAME(S)/INITIAL(S)</td><td>SUFFIX</td></tr>
</table>

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: Singh, Bikram
86404652                     267                                3379571888435

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

**11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form**
U220189040728  4/30/2022  SS CA

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form**

12a. ORGANIZATION'S NAME
FARM CREDIT SERVICES OF AMERICA, PCA

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**13.** Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

OR | 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):**
1) Midland Tractor Company

Key Dollar PF9 Cab 9357
Key Dollar PF9 Cab 9359
T.G. Schmeiser VBL-11R Leveler 9384
Flory 860XL Nut Harvester: Pull-Type 8692
Jackrabbit WEDGE 10 Reservoir Cart 1643
Exact E355 Conditioner 9383

**15. This FINANCING STATEMENT AMENDMENT:**
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**16.** Name and address of a RECORD OWNER of real estate described in item 17
(if Debtor does not have a record interest):

**17.** Description of real estate:

**18. MISCELLANEOUS:** 88404652-CA-0   14060 - FARM CREDIT SERVICES   FARM CREDIT SERVICES OF   File with: Secretary of State, CA   267   3379571888435

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**      14060 - FARM CREDIT

Lien Solutions                          86984842
P.O. Box 29071
Glendale, CA 91209-9071                 CALI

File with: Secretary of State, CA

**For Office Use Only**

**-FILED-**

File No.: U220201996832

Date Filed: 6/9/2022

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
U220189040728   4/30/2022  SS CA

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Fein: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes:          **AND** Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name: do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**8.** ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☒ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:
Air-O-Fan GB38R 1200 GALLON Orchard Sprayer: Pull-Type 8919 Air-O-Fan FB38R 1200 GALLON Orchard Sprayer: Pull-Type 8921 John Deere 5125ML Tractor 1LV5125MVNM702911 Flory V62 Nut Sweeper: Self-Propelled 8636 COE S7R Tree Shaker S7R+-22-898 COE S7R Tree Shaker S7R+-33-894 Flory V62 Nut Sweeper: Self-Propelled 8637 John Deere 5125ML Tractor 1LV5125MLNM702779 Key Dollar PF9 Cab 9357 Key Dollar PF9 Cab 9359 Flory 860XL Nut Harvester: Pull-Type 8692 Jackrabbit WEDGE 10 Reservoir Cart 1643 Exact E355 Conditioner 9383

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: Singh, Bikram
86984842                267                                    3379571888435

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-6071 Tel (800) 331-3282

B0806-3844 06/09/2022 5:00 PM Received by California Secretary of State

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

**11. INITIAL FINANCING STATEMENT FILE NUMBER:** Same as item 1a on Amendment form
U220189040728   4/30/2022   SS CA

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

| | |
|---|---|
| **12a. ORGANIZATION'S NAME** | |
| FARM CREDIT SERVICES OF AMERICA, PCA | |

OR

| |
|---|
| **12b. INDIVIDUAL'S SURNAME** |
| **FIRST PERSONAL NAME** |
| **ADDITIONAL NAME(S)/INITIAL(S)**     **SUFFIX** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**13.** Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| | | | |
|---|---|---|---|
| **13a. ORGANIZATION'S NAME** | | | |
| **13b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):**
1) Midland Tractor Company

**15. This FINANCING STATEMENT AMENDMENT:**
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**17. Description of real estate:**

**16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):**

**18. MISCELLANEOUS:** 66964842-CA-0   14060 - FARM CREDIT SERVICES    FARM CREDIT SERVICES OF    File with: Secretary of State, CA    267   3379571688435

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT 4

Customer No.: ▓   Contract No.: 1513   Date: May 26, 2022       FORM 8422 (10-2019)

# AgDirect®

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

| BUYER ("Buyer") |
|---|

| | |
|---|---|
| NIA Ag Solutions, a Corporation<br>18140 Road 20<br>Madera, CA 93637 | State of Organization: California<br>Organization ID: 3835563<br>Organization Type: Corporation |
| Bikram Singh<br>18144 Road 20<br>Madera, CA 93637 | Principal Residence: California<br>Organization ID: Not Applicable<br>Organization Type: Individual |
| Friends Farm Inc., a Corporation<br>18144 Road 20<br>Madera, CA 93637 | State of Organization: California<br>Organization ID: 4249376<br>Organization Type: Corporation |

| SELLER ("Seller") |
|---|

Midland Tractor Company
1901 W Cleveland Ave, PO Box 1227
Madera, CA 93639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

| EQUIPMENT DESCRIPTION ("Equipment") | | | |
|---|---|---|---|
| Make | Model | Description | Serial No. |
| Jackrabbit | 36/36 STOCK PILING | Elevator | YD82 |
| Jackrabbit | 180 | Shuttle | JRT1484 |
| Jackrabbit | 180 | Shuttle | JRT1494 |
| Jackrabbit | 180 | Shuttle | JRT1495 |

| EQUIPMENT LOCATION ("Equipment Location") |
|---|

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

| STATEMENT OF COST | | | |
|---|---|---|---|
| 1. | Cash Sale Price | 1. | 623,550.00 |
| 2. | Sales Tax, if any | 2. | 17,155.88 |
| **3.** | **TOTAL CASH PRICE (1 + 2)** | **3.** | **640,705.88** |
| 4. | Cash Down Payment | 4. | 60,000.00 |
| 5. | Net Trade In Allowance | 5. | .00 |
| **6.** | **TOTAL DOWN PAYMENT (4 + 5)** | **6.** | **60,000.00** |
| 7. | Unpaid Cash Balance (3 − 6) | 7. | 580,705.88 |
| 8. | Other Charges | | |
| | (a) Documentation Fee | 8a. | 300.00 |
| **9.** | **TOTAL OTHER CHARGES (8a)** | **9.** | **300.00** |
| **10.** | **AMOUNT FINANCED (BASIC TIME PRICE) (7 + 9)** | **10.** | **581,005.88** |
| **11.** | **FINANCE CHARGE (TIME-PRICE DIFFERENTIAL)** | **11.** | **103,094.57** |
| **12.** | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (10 + 11)** | **12.** | **684,100.45** |
| **13.** | **TIME-SALES PRICE (6 + 12)** | **13.** | **744,100.45** |

| ANNUAL INTEREST RATE |
|---|

Annual Interest Rate ("AIR"): 5.590

Interest rate is fixed at the AIR until maturity.

| TERMS OF PAYMENT |
|---|

**EQUAL INSTALLMENTS**
Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and Type (Each Payment) | | Begin Date | End Date |
|---|---|---|---|---|---|
| 5 | Annually | $136,820.09 | Principal & interest | 06/01/2023 | 06/01/2027 |

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian.

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| | |
|---|---|
| **NOTICE TO BUYER:** | **1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. 2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT. 3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT. 5) KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS. 6) THE ADDITIONAL TERMS ARE PART OF THIS AGREEMENT.**<br><br>**NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE.** |

| **SECURITY INTEREST** |
|---|
| Buyer hereby grants to Seller, together with its successors and assigns and Finance Company, a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine. |

## RETAIL INSTALLMENT CONTRACT

Acknowledgment by Buyer(s): Buyer(s) hereby acknowledge personal delivery of a copy of this Contract signed by the Seller.

BUYER WAIVES ANY RIGHT TO A TRIAL BY JURY AND AGREES THAT TRIAL SHALL BE BY AND ONLY TO THE COURT.

Buyer(s):

NIA Ag Solutions, A Corporation

*Bikram Singh*
By _____     Date: ___5/26/2022___
   7875C67C7D69404...
*Bikram Singh*, CEO

Friends Farm Inc, A Corporation

*Bikram Singh*
By _____     Date: ___5/26/2022___
   7875C67C7D69404...
*Bikram Singh*, Secretary

*Bikram Singh*
_____     ___5/26/2022___
   7875C67C7D69404...
Bikram Singh           Date

Seller: Midland Tractor Company
*Jan Mytych*
BY: _____     TITLE: __Office Manager__     DATE: ___5/27/2022___
   74584FEDC7FF49A...

| **SELLER ASSIGNMENT** |
|---|
| FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA (**together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment"). Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event. "Trigger Event" means |

Filed 12/17/24     case 24-11513     Doc 1

THIS IS A COPY



the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined). Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph. Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective. Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

Seller: Midland Tractor Company

By: _____ TITLE: Office Manager DATE: 5/27/2022

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Doc 1

Buyer hereby agrees as follows:

**1. BUYER'S REPRESENTATIONS AND WARRANTIES.** Buyer hereby represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; (l) Buyer agrees Seller or Finance Company may provide to any guarantor the current outstanding balance and payment status on this Contract; and (m) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

**2. BUYER'S WAIVERS.** To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

**3. ASSIGNMENTS.** Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (i) Finance Company may further assign this Contract without Buyer's consent and (ii) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company was Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Buyer will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company, it being understood that Seller shall remain liable to Buyer for any such claims. Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

Buyer further acknowledges each of the following: (a) Finance Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.

**4. APPOINTMENT OF FINANCE COMPANY AS SERVICER.** Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

**5. DISBURSEMENT AUTHORIZATION.** Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

**6. INSURANCE.** Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

7.  **GENERAL INDEMNITY.**  Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property.  Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

8.  **LATE PAYMENT FEE.**  If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment.  Time is of the essence.  If any portion of the service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

9.  **EVENTS OF DEFAULT.**  An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder.  No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

10.  **REMEDIES.**  Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it. If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate.  The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to other any other remedy

available to Seller at law or in equity.  To the extent permitted by law, Buyer hereby waives any right which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller.  If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable.  Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

11.  **PERFORMANCE BY FINANCE COMPANY.**  If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation.  The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company.  Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company.  This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

12.  **USURY.**  Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate.  If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer.  The Finance Charge is calculated on the basis of a year of days elapsed and a year consisting of three hundred sixty (360) days.

13.  **BENEFIT.**  Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several.  Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

14.  **SEVERABILITY.**  Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

15.  **ORIGINAL / TRANSMITTAL.**  This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

16.  **CONSENT TO ELECTRONIC COMMUNICATIONS.** Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability

---

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known by Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

**17. USA PATRIOT ACT.** Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer. Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

**18. MISCELLANEOUS.** This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein. No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company. Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

# EXHIBIT 5

DocuSign Envelope ID: F17EABD7-C73D-4136-A7CC-4230FD23F288

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

FORM 8430j (7-2021)

Customer No.: ▮▮▮▮   Contract No.: ▮ 1513   Date: August 26, 2022

## AgDirect®

### AMENDMENT TO RETAIL INSTALLMENT CONTRACT
### AND SECURITY AGREEMENT

This AMENDMENT ("Amendment") to Retail Installment Contract and Security Agreement number ▮▮▮▮ 1513 dated May 26, 2022, and any amendments or addenda thereof ("Contract") is made and entered into on August 26, 2022, by and among the buyer(s) and/or purchaser(s) ("Buyer") designated in the Contract and Farm Credit Services of America, PCA, as servicer, ("Finance Company"). The parties hereby amend the terms of the Contract only as specified below. The terms of the Contract shall in all other respects remain in full force and effect and are made a part hereof by this reference.

**EQUIPMENT DESCRIPTION ("EQUIPMENT"):**

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Jackrabbit | 36/36 STOCK PILING | Elevator | YD82 |
| Jackrabbit | 180 | Shuttle | JRT1484 |
| Jackrabbit | 180 | Shuttle | JRT15000 |
| Jackrabbit | 180 | Shuttle | JRT1495 |

**SECURITY INTEREST:** Buyer hereby grants to Seller, together with its successors and assigns (including but not limited to Finance Company), a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources including, but not limited to, all federal and state government farm program subsidy payments, to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates. Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest. If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer. Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

**EQUIPMENT LOCATION:** Buyer acknowledges and agrees that the equipment location ("Equipment Location") is 18140 Road 20, Madera, CA 93637.

**FEE:** The fee for this servicing action is $0.00.

**TRANSMITTAL:** This Amendment may be authenticated by a party and transmitted by facsimile or electronic media. Any authenticated copy of this Amendment which was transmitted by facsimile or electronic media shall be deemed an executed original of this Amendment.

**CERTIFICATION:** Buyer further agrees as follows:
Finance Company may adjust the payment schedule set out in said Contract and as modified by the provisions of this Amendment as needed to include any change in interest rates; any change in amounts advanced, extended, deferred, or reamortized; or any change in any other provision of said Contract and any change in the amounts outstanding may, at Finance Company's option, be added to the principal balance owing on said Contract and will accrue interest at the interest rate and terms set out in the Contract; Except as specifically modified by this Amendment, all terms, conditions, covenants, warranties, and provisions of said Contract and any amendments or addenda thereto, and any other document(s) or instrument(s) evidencing either the indebtedness or property given as collateral for the same remain in full force and effect and are hereby ratified and confirmed;
To provide Finance Company on request with financial information in a format acceptable to Finance Company;
That the rights of all parties executing any documents specified above but not executing this Amendment are reserved; and
That failure to pay any amounts or to otherwise comply with the terms and conditions specified above may be treated as a default under the original Contract.

**CONSENT TO ELECTRONIC COMMUNICATIONS.** Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known by Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

Buyer certifies that ALL the information provided by Buyer to Finance Company is true and correct.

# EXHIBIT 6

Filed 12/27/24   Case 24-01063   Doc 1



U220198381741

## STATE OF CALIFORNIA
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516



For Office Use Only

# -FILED-

File No.: U220198381741

Date Filed: 5/31/2022

| Submitter Information: | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 GLENDALE, CA 912099071 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| BIKRAM SINGH | 18144 ROAD 20 MADERA, CA 93637 |
| FRIENDS FARM INC. | 18144 ROAD 20 MADERA, CA 93637 |
| NIA AG SOLUTIONS | 18140 ROAD 20 MADERA, CA 93637 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA | PO BOX 2409 OMAHA, NE 68103 |
| MIDLAND TRACTOR COMPANY | 1901 W CLEVELAND AVE PO BOX 1227 MADERA, CA 93639 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
Jackrabbit 36/36 STOCK PILING Elevator YD82 Jackrabbit 180 Shuttle JRT1484 Jackrabbit 180 Shuttle JRT1494 Jackrabbit 180 Shuttle JRT1495

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
86843337

B1529-0841 02/28/2023 5:00 PM Received by California Secretary of State

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS

For Office Use Only

**-FILED-**

File No.: U230014257222

Date Filed: 2/28/2023

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   14060 - FARM CREDIT

Lien Solutions          91587267
P.O. Box 29071
Glendale, CA 91209-9071    CALI

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
U220198381741   5/31/2022   SS CA

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:      AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**8.** ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☒ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:
Jackrabbit 36/36 STOCK PILING Elevator YD82 Jackrabbit 180 Shuttle JRT1484 Jackrabbit 180 Shuttle JRT1497 Jackrabbit 180 Shuttle JRT15000

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: Singh, Bikram

| 91587267 | 267 | 3381513888435 |
|---|---|---|

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

B1529-0842 02/28/2023 5:00 PM Received by California Secretary of State

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| U220198381741  5/31/2022  SS CA |

| 12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form | |
|---|---|
| 12a. ORGANIZATION'S NAME | |
| FARM CREDIT SERVICES OF AMERICA, PCA | |
| OR | 12b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)  SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| 13a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S)  SUFFIX |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):
1) Midland Tractor Company

| 15. This FINANCING STATEMENT AMENDMENT: | 17. Description of real estate: |
|---|---|
| ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing | |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest): | |

| 18. MISCELLANEOUS: 91587267-CA-0  14060 - FARM CREDIT SERVICES   FARM CREDIT SERVICES OF   File with: Secretary of State, CA   267  3381513888435 |
|---|

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

B1046-6049 09/02/2022 5:00 PM Received by California Secretary of State

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**For Office Use Only**

**-FILED-**

File No.: U220225321728

Date Filed: 9/2/2022

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   14060 - FARM CREDIT

Lien Solutions          88545892
P.O. Box 29071
Glendale, CA 91209-9071   CALI

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
U220198381741   5/31/2022   SS CA

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in Item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:     AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change – provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☒ COLLATERAL CHANGE: Also check one of these four boxes: ☒ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:
Jackrabbit 36/36 STOCK PILING Elevator YD82 Jackrabbit 180 Shuttle JRT1484 Jackrabbit 180 Shuttle JRT1495 Jackrabbit 180 Shuttle JRT15000

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
FARM CREDIT SERVICES OF AMERICA, PCA

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:  Debtor Name: Singh, Bikram
88545892          267                                    3381513888435

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

B1046-6050 09/02/2022 5:00 PM Received by California Secretary of State

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|
| U220198381741  5/31/2022  SS CA |

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

| OR | 12a. ORGANIZATION'S NAME |
|---|---|
| | FARM CREDIT SERVICES OF AMERICA, PCA |
| | 12b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) / SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

| OR | 13a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):
1) Midland Tractor Company

| 15. This FINANCING STATEMENT AMENDMENT: | 17. Description of real estate: |
|---|---|
| ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing | |
| 16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest): | |

18. MISCELLANEOUS: 88545892-CA-0  14060 - FARM CREDIT SERVICES    FARM CREDIT SERVICES OF    File with: Secretary of State, CA    267  3381513888435

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT 7

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

FORM 8422 (10-2019)
DocuSign Envelope ID: ▮



# AgDirect®

## RETAIL INSTALLMENT CONTRACT
## AND SECURITY AGREEMENT ("Contract")

### BUYER ("Buyer")

| | |
|---|---|
| Friends Farm Inc., a Corporation<br>18144 Road 20<br>Madera, CA 93637 | State of Organization: California<br>Organization ID: 4249376<br>Organization Type: Corporation |
| Bikram Singh<br>18144 Road 20<br>Madera, CA 93637 | Principal Residence: California<br>Organization ID: Not Applicable<br>Organization Type: Individual |

### SELLER ("Seller")

Midland Tractor Company
1901 W Cleveland Ave, PO Box 1227
Madera, CA 93639

Seller hereby sells and Buyer hereby buys, on the terms and conditions hereinafter set forth, the following equipment:

### EQUIPMENT DESCRIPTION ("Equipment")

| Make | Model | Description | Serial No. |
|---|---|---|---|
| T.G. Schmeiser | VBL-16R | Blade | VB9931-22 |
| T.G. Schmeiser | VBL-13R | Blade | VB3063-21 |
| T.G. Schmeiser | VBL-13R | Blade | VB3064-21 |
| Jackrabbit | CO-JACK | Rodent Control System | CJ391 |

### EQUIPMENT LOCATION ("Equipment Location")

Equipment is or will be located at the address first listed above or on the following described real estate (if any).

### STATEMENT OF COST

| | | | | |
|---|---|---|---|---|
| 1. | Cash Sale Price | | 1. | 46,200.00 |
| 2. | Sales Tax, if any | | 2. | 1,278.75 |
| 3. | **TOTAL CASH PRICE (1 + 2)** | | 3. | 47,478.75 |
| 4. | Cash Down Payment | | 4. | 4,500.00 |
| 5. | Net Trade In Allowance | | 5. | .00 |
| 6. | **TOTAL DOWN PAYMENT (4 + 5)** | | 6. | 4,500.00 |
| 7. | Unpaid Cash Balance (3 – 6) | | 7. | 42,978.75 |
| 8. | Other Charges | | | |
| | (a) Documentation Fee | | 8a. | 300.00 |
| 9. | **TOTAL OTHER CHARGES (8a)** | | 9. | 300.00 |
| 10. | **AMOUNT FINANCED (BASIC TIME PRICE) (7 + 9)** | | 10. | 43,278.75 |
| 11. | **FINANCE CHARGE (TIME-PRICE DIFFERENTIAL)** | | 11. | 10,874.45 |
| 12. | **TOTAL OF PAYMENTS (TIME-PRICE BALANCE) (10 + 11)** | | 12. | 54,153.20 |
| 13. | **TIME-SALES PRICE (6 + 12)** | | 13. | 58,653.20 |

### ANNUAL INTEREST RATE

Annual Interest Rate ("AIR"):  7.750

Interest rate is fixed at the AIR until maturity.

### TERMS OF PAYMENT

**EQUAL INSTALLMENTS**
Buyer agrees to pay and Seller agrees to accept the **TOTAL OF PAYMENTS** (Item 10) in consecutive equal installments as follows:

| No. | Each Due | Amount and Type (Each Payment) | | Begin Date | End Date |
|---|---|---|---|---|---|
| 5 | Annually | $10,830.64 | Principal & Interest | 12/01/2023 | 12/01/2027 |

Buyer authorizes Seller to fill in the blanks relating to the due dates of the payments and the identifying numbers of the Equipment. This Contract is subject to the terms and conditions set forth on this page and on the reverse side ("Additional Terms"), all of which are hereby made a part hereof and which Buyer acknowledges that it has read (to expedite this transaction and to assure legibility, Additional Terms may be provided by separate document rather than

App #: 2568576;  CIF # ▮    Contract #: ▮ 57          267CI          Legal Doc. Date: November 17, 2022
FORM 8422, Retail Installment Contract and Security Agreement                                    Page 1 of 6
DocuSign Envelope ID: A8B21B14-13D4-4D38-9B81-9264B045F01F

appearing on the reverse side). **BUYER REPRESENTS THAT THE EQUIPMENT WILL BE USED PRIMARILY FOR BUSINESS OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Buyer acknowledges that Seller offered to sell the Equipment to Buyer for the above-stated Cash Sale Price or the Time-Sales Price, and Buyer elected to purchase the Equipment for the Time-Sales Price. **BUYER ACKNOWLEDGES THAT SELLER IS NOT THE AGENT OF ANY ASSIGNEE OF SELLER, THAT ANY REPRESENTATIONS OR WARRANTIES MADE BY SELLER ARE NOT BINDING ON ANY ASSIGNEE, AND THAT SELLER DOES NOT HAVE THE AUTHORITY TO MODIFY ANY TERM OR PROVISION OF THIS CONTRACT SUBSEQUENT TO ASSIGNMENT OF THIS CONTRACT BY SELLER.**

| NOTICE TO BUYER: | 1) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.  2) EVEN IF YOU ARE ADVISED OTHERWISE, DO NOT SIGN THIS CONTRACT: (A) BEFORE YOU READ IT (INCLUDING THE ADDITIONAL TERMS); OR (B) IF IT CONTAINS ANY BLANK SPACES EXCEPT PAYMENT DATES AND IDENTIFYING NUMBERS FOR EQUIPMENT.  3) UNDER THE LAW, YOU HAVE THE RIGHT TO PREPAY THE FULL AMOUNT DUE UNDER THIS CONTRACT AT ANY TIME AND OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.  4) UPON REQUEST, SELLER WILL ADVISE YOU AS TO THE AMOUNT OF THE FINANCE CHARGE REFUND YOU WILL RECEIVE IF YOU PREPAY THE ENTIRE BALANCE OF THE INDEBTEDNESS UNDER THIS CONTRACT.  5) KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.  6) THE ADDITIONAL TERMS ARE PART OF THIS AGREEMENT.  NO ORAL AGREEMENT, GUARANTY, PROMISE, REPRESENTATION, OR WARRANTY SHALL BE BINDING ON ANY ASSIGNEE. |
|---|---|

### SECURITY INTEREST

Buyer hereby grants to Seller, together with its successors and assigns and Finance Company, a continuing security interest in the Equipment, together with all attachments, replacements, exchanges, parts, substitutions, accessions, additions, repairs and accessories incorporated therein or affixed thereto, and other rights to payment assigned to Seller or Finance Company, from any and all sources to secure: (a) payment and performance of all of Buyer's obligations under this Contract; and (b) to the extent permitted by law, any and all other indebtedness, however evidenced, now or hereafter owing by Buyer and its parent, subsidiaries or affiliates to Seller, or any assignees (including Finance Company) and their parents, subsidiaries or affiliates  Buyer hereby authorizes Seller and Finance Company to execute or otherwise authenticate and file such financing statements, related amendments and other documents, and to perform such other acts as Seller or Finance Company may deem appropriate to perfect a security interest in the Equipment, and Buyer hereby agrees to take such other and further action as may be required by Seller or Finance Company for the purposes of maintaining and perfecting such security interest.  If Seller or Finance Company has, prior to the date of execution or authentication of this Contract, performed any act authorized by the preceding sentence, Buyer hereby ratifies and adopts each and every such act as the valid and binding act of Buyer.  Buyer authorizes Seller and Finance Company, and hereby grants Seller and Finance Company a power of attorney (which is coupled with an interest), to file financing statements and amendments thereto describing the Equipment and containing any other information required by the Uniform Commercial Code and all proper terminations of the filings of other secured parties with respect to the Equipment, and to execute and file applications for certificates of title or similar documents, all in such form and substance as Seller and Finance Company may determine.

## RETAIL INSTALLMENT CONTRACT

Acknowledgment by Buyer(s): Buyer(s) hereby acknowledge personal delivery of a copy of this Contract signed by the Seller.

BUYER WAIVES ANY RIGHT TO A TRIAL BY JURY AND AGREES THAT TRIAL SHALL BE BY AND ONLY TO THE COURT.

Buyer(s):

Friends Family Inc., A Corporation

By **Bikram Singh**
7875C67C7D60404...
*Bikram Singh, Secretary*          Date: 11/17/2022

**Bikram Singh**
7875C67C7D60404...
Bikram Singh          Date 11/17/2022

Seller: Midland Tractor Company
BY: *Jan Mytych*
74584FE0C7FF48A...          TITLE: Office Manager          DATE: 11/18/2022

### SELLER ASSIGNMENT

FOR VALUE RECEIVED, subject to the terms and conditions of this paragraph, the undersigned Seller hereby sells, assigns and transfers to **FARM CREDIT SERVICES OF AMERICA, PCA** (together with its successors and assigns, "Finance Company"), all of Seller's right, title and interest in and to this Contract, the Equipment, and all rights and remedies of Seller in connection therewith (together, the "Assignment").  Notwithstanding the foregoing, such Assignment is specifically conditioned and such Assignment shall take effect only upon the occurrence of a Trigger Event.  "Trigger Event" means the delivery of a written notice to Seller informing Seller that Finance Company has elected to make the Assignment effective, which notice shall be delivered only after the occurrence of an Event of Default (as hereinafter defined).  Said notice shall be deemed to have been delivered upon personal service to Seller, or on the day following deposit with a reputable overnight courier service, or on the second day following deposit in the U.S. Mail, first class postage prepaid, of such notice to Seller at its address designated above or at such other address as may hereafter be designated by Seller in a written notice to Finance Company complying as to delivery with the terms of this paragraph.  Upon Finance Company's delivery of such written notice to Seller, such Assignment will immediately and automatically, and without further notice or action of any kind by any party, be effective.  Notwithstanding the parties' intent that such Assignment become effective without any further notice or action of any kind, upon Finance Company's request, Seller will execute and deliver whatever documents and take whatever action as Finance Company may deem necessary or desirable in order to confirm the foregoing Assignment.

**Seller: Midland Tractor Company**

App #: 2568576;  CIF #: ▮▮▮  Contract #: ▮▮57          267CI          Legal Doc. Date: November 17, 2022
FORM 8422, Retail Installment Contract and Security Agreement          Page 2 of 6
DocuSign Envelope ID: A8B21B14-13D4-4D38-9B81-9264B045F01F

By: *Jan Mytych*          TITLE: Office Manager          DATE: 11/16/2022

The Authoritative Copy of this record is held at na2.docusign.



Filed 12/27/24          Case 24-01063          THIS IS A COPY          Doc 1

The Authoritative Copy of this record is held at na2.docusign.

ADDITIONAL TERMS AND CONDITIONS

Buyer hereby agrees as follows:

1. **BUYER'S REPRESENTATIONS AND WARRANTIES.** Buyer hereby represents and warrants each of the following: (a) Buyer: (i) if an individual/proprietorship is a resident of the state designated on the first page of this Contract, (ii) if an organization, its principal place of business, or if it maintains more than one location, its chief executive office is located in the state designated on the first page of this Contract, and (iii) if a registered organization, it is organized under the laws of the state designated on the first page of this Contract; (b) the Equipment will be kept at the Equipment Location, and Buyer will immediately notify Finance Company in writing of any change in Equipment Location; (c) Buyer will not attach or affix the Equipment to real property in any manner, and the Equipment shall, in all events, remain personal property; (d) Buyer will not sell, offer to sell, lease, rent or otherwise transfer or hypothecate the Equipment or any interest therein; (e) Buyer will promptly pay all taxes, fees, and assessments which may be levied or assessed with respect to this sale, or upon the Equipment, or their use; (f) Buyer will keep the Equipment free from any adverse lien, security interest, claim or encumbrance and in good order and repair; (g) Buyer will permit Seller or Finance Company to examine and inspect the Equipment at any time; (h) Buyer will immediately notify Finance Company in writing of any change in Buyer's state of residence, its principal place of business or chief executive office, or the state in which Buyer is organized; (i) No change has been made to the name, ownership, control, legal status or organizational documents of Buyer since the time any such information was last provided to Finance Company; (j) Buyer has received the Applicant Disclosure and Authorization and agrees to the terms therein; (k) Buyer agrees Seller may provide Buyer's information to Finance Company and Finance Company may use the information for any purpose; (l) Buyer agrees Seller or Finance Company may provide to any guarantor the current outstanding balance and payment status on this Contract; and (m) Buyer has full authority to enter into this Contract, the execution of this Contract by Buyer does not violate any law or regulation or agreement with third parties, and it has taken such action as may be necessary or appropriate to make this Contract binding upon Buyer.

2. **BUYER'S WAIVERS.** To the extent permitted by applicable law, Buyer hereby waives any and all rights and remedies conferred upon Buyer by applicable law, including, but not limited to, Buyer's rights to: (a) rescind this Contract; (b) reject the Equipment; (c) revoke acceptance of the Equipment; (d) recover damages from Seller for any breaches of warranty or for any other reason; (e) "cover" by making any purchase or lease of or contract to purchase or lease substitute equipment; (f) recover any general, special, incidental, or consequential damages; and (g) specific performance, replevin, detinue, sequestration, claim and delivery or the like regarding any Equipment; or (h) a security interest in the Equipment. Buyer also waives any rights conferred by statute or otherwise which may limit or modify any right or remedy of Seller or Finance Company. Any action by Buyer for any alleged breach of this Contract, including breach of warranty or indemnity, must be commenced within one (1) year after any such cause of action accrues.

3. **ASSIGNMENTS.** Buyer will not, without the prior written consent of Seller and Finance Company: (a) voluntarily or involuntarily transfer, sell, assign, pledge, sublet, lend, grant a security interest in, relinquish possession of, or otherwise hypothecate Buyer's interest in this Contract or the Equipment; or (b) permit the Equipment or any part thereof to be used by anyone other than Buyer or Buyer's employees. Seller may hold this Contract or it may assign it for value to Finance Company. Upon an Assignment, (i) Finance Company may further assign this Contract without Buyer's consent and (ii) after such Assignment (A) Finance Company, as assignee, shall have all of the rights and remedies, but none of the obligations or duties, of Seller hereunder, and all of Buyer's agreements, representations and warranties shall be deemed to have been made to Finance Company with the same force and effect as if Finance Company was Seller hereunder; (B) Finance Company shall have the power and authority to enter into any amendment or modification with Buyer of this Contract and any related document or instrument (except service or similar agreements exclusively between Seller and Buyer) without requiring Seller's agreement to the same; and (C) Buyer will assert all claims of any nature that it may have against Seller, including, but not limited to, delivery of Equipment, defects in the Equipment and similar claims, directly against Seller, and Buyer will not assert any such claim, defense, setoff, or counterclaim against Finance Company, it being understood that Seller shall remain liable to Buyer for any such claims. Buyer acknowledges each of the following: (1) Seller is not Finance Company's agent for any purpose nor is Finance Company related to or affiliated with Seller; (2) Finance Company has no knowledge or information regarding the condition or suitability of the Equipment for Buyer's purposes; and (3) Finance Company has relied upon Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against Finance Company any claims, defenses, setoffs, or counterclaims that it presently has or may hereafter have against Seller.

Buyer further acknowledges each of the following: (a) Finance Company is not the manufacturer of the Equipment or the manufacturer's agent or a dealer therein; (b) the Equipment is of a size, design, capacity, description and manufacture selected by the Buyer; (c) Buyer is satisfied that the Equipment is suitable and fit for Buyer's purposes; (d) FINANCE COMPANY HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF THE EQUIPMENT, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE QUALITY OR CAPACITY OF THE MATERIALS IN THE EQUIPMENT OR WORKMANSHIP IN THE EQUIPMENT, TITLE TO THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, AND FINANCE COMPANY HEREBY SPECIFICALLY DISCLAIMS ANY AND ALL SUCH WARRANTIES; (e) THE EQUIPMENT IS ACCEPTED BY BUYER ON AN "AS-IS" BASIS, "WITH ALL FAULTS", SUBJECT TO ANY MANUFACTURER'S WARRANTIES; and (f) Finance Company shall not be liable to Buyer for any loss, damage, or expense, direct, consequential or otherwise, caused directly or indirectly by the Equipment. No defect or unfitness of the Equipment shall relieve Buyer of the obligation to pay any installment or perform any other condition under this Contract.

4. **APPOINTMENT OF FINANCE COMPANY AS SERVICER.** Seller hereby appoints Finance Company as servicer of this Contract with full right and authority to collect all payments due and to become due hereunder, and Buyer hereby acknowledges and consents to such appointment and shall make all payments hereunder on or before the due dates therefor directly to Finance Company, as servicer of this Contract, at such places as Finance Company may from time to time designate in writing to Buyer. Seller authorizes, and hereby constitutes and appoints, Finance Company (and its officers, employees, representatives and designated agents), with full power of substitution, as Seller's true and lawful attorney-in-fact with full power and authority in the place and stead of Seller and in the name of Seller or in its own name, from time to time, in Finance Company's sole discretion to take any and all action as Finance Company deems necessary or desirable in its role as servicer and, following the occurrence of an Event of Default, to take any action Seller may be permitted to take hereunder to enforce any or all of Seller's rights and remedies hereunder and to otherwise collect from Buyer or any guarantor all sums due or to become due under this Contract. The power of attorney granted hereby is coupled with an interest and may not be revoked or canceled by Seller without Finance Company's prior written consent. The servicing and other rights created in favor of Finance Company pursuant to this Section 4 are assignable by Finance Company without consent of Seller, Buyer or any other person.

5. **DISBURSEMENT AUTHORIZATION.** Buyer and Seller hereby authorize Finance Company, as servicer of this Contract and as Seller's attorney-in-fact, to disburse financing proceeds via check, draft, wire, electronic, or other type of transfer, ACH (Automatic Clearing House), or other means directly to a third party as directed by Buyer and/or Seller and/or apply excess proceeds, if any, as a principal payment on this Contract.

6. **INSURANCE.** Buyer shall provide, maintain and pay for physical damage insurance against the loss, theft, or damage to the Equipment with loss payable to Finance Company and a deductible approved by Finance Company. Such insurance will be in an amount at least equal to the lesser of the loan balance(s), the actual cash value of the Collateral, or the replacement cost of the Collateral, and will at a minimum, cover losses caused by fire, lightning, explosion, aircraft, vehicles, vandalism, smoke, windstorm, and hail. Buyer will obtain and keep any required flood insurance in force to cover losses by flood as required by Finance Company or by the National Flood Insurance Act of 1968, as amended, or by regulations implementing the same. Buyer shall also maintain insurance against such other risks and in such amounts as Seller and/or Finance Company may require. All insurance shall contain the insurer's agreement to give thirty (30) days' written notice to Seller and Finance Company before cancellation of any policy of insurance. Upon request by Seller or Finance Company, Buyer shall immediately deliver such policies or copies thereof or certificates of insurance to Seller and Finance Company. Buyer shall notify Seller and Finance Company in writing within five (5) days of any loss, theft, damage to or destruction of the Equipment, and Buyer shall: (a) promptly place, at Buyer's expense, the same in good repair, condition and working order; or (b) if the Equipment is damaged or destroyed beyond repair or lost by theft, immediately pay to Finance Company, as servicer of this Contract, all remaining indebtedness due and owing pursuant to this Contract, including, but not limited to, accrued interest. If the Equipment is repaired, pursuant to (a) above, this Contract shall continue in full force and effect, and any insurance proceeds payment received by Finance Company pursuant to this Section 6 shall be endorsed over to Buyer at such time as

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

## ADDITIONAL TERMS AND CONDITIONS

Buyer has provided satisfactory proof to Seller and Finance Company that such repairs have been completed. Buyer hereby irrevocably appoints Finance Company as Buyer's attorney-in-fact to make claim for, and execute and endorse all documents, checks or drafts in connection with any insurance claim and to take any other action necessary to maintain Seller's and Finance Company's security interest hereunder.

**7. GENERAL INDEMNITY.** Buyer shall indemnify and hold Seller, Finance Company and any assignee of either of them harmless from and against any and all claims, losses, liabilities, damages, judgments, suits, and all legal proceedings of any nature whatsoever, including, but not limited to, negligence, tort, and strict liability, and any and all costs and expenses in connection therewith, including attorneys' fees, arising out of or in any manner related to: (a) the manufacture, purchase, financing, ownership, delivery, rejection, non-delivery, possession, use, transportation, storage, operation, maintenance, repair, return, or other disposition of the Equipment; or (b) this Contract, including, but not limited to, claims for injury to or death of persons and for damage to property. Buyer shall immediately give Seller and Finance Company written notice of any such claim or liability.

**8. LATE PAYMENT FEE.** If any sums due and owing under this Contract are not paid within fifteen (15) days after the due date, Buyer agrees that Finance Company may assess a service charge on each delinquent installment in an amount equal to two percent (2%) of each such installment. Time is of the essence. If any service charges assessed pursuant to the terms of this Contract are not paid by Buyer within fifteen (15) days after the due date of such service charge, Finance Company may, in its sole discretion and without notice to Buyer, add such sums to the Amount Financed (Item 8).

**9. EVENTS OF DEFAULT.** An event of default ("Event of Default") shall occur hereunder if any Buyer or any guarantors of the obligations imposed by this Contract: (a) fails to pay any payment hereunder when due; (b) fails to perform or observe any other covenant, condition or agreement of Buyer hereunder, or breaches any representation or provision contained herein; (c) attempts to remove, sell, transfer, encumber, part with possession, lease or rent the Equipment or assign Buyer's rights or duties hereunder; (d) institutes insolvency, bankruptcy or reorganization proceedings, or such proceedings are instituted against Buyer or any guarantors, or Buyer or any guarantors make a general assignment for the benefit of, or enters into any composition or arrangement with creditors; (e) shall, at any time, be in default under any other agreement with Seller, Finance Company or any assignee of either of them or any of their parents, subsidiaries or affiliates; (f) defaults under the terms and provisions of any mortgage, deed of trust, lease or other encumbrance secured by or relating to the real property upon which the Equipment is located; (g) shall create, incur, assume or suffer to exist any mortgage, lien, pledge or other encumbrance or other attachment of any nature upon, affecting or with respect to the Equipment or this Contract; (h) dies, or if Buyer or any guarantor is a corporation, partnership or other entity, dissolves or terminates its existence, or sells or transfers a majority or controlling interest in such corporation, partnership or other entity; (i) has made any representation, warranty or statement to Seller which is false in any material respect when made or furnished; (j) performs or fails to perform any other act as a result of which Seller or Finance Company deems itself insecure or the Equipment to be in jeopardy; or (k) any loss, theft, or substantial damage to the Equipment occurs which is not fully compensable under any policy of insurance.

The failure of Seller or Finance Company to require strict performance by Buyer of any provision of this Contract shall not constitute a waiver of any right of Seller or Finance Company hereunder. No waiver by Seller or Finance Company of any breach or default shall constitute a waiver of any other breach or default by Buyer or a waiver of any right of Seller or Finance Company hereunder.

**10. REMEDIES.** Upon the occurrence of any Event of Default, Seller may, in its sole discretion, do any one or more of the following: (a) accelerate all sums due and owing or to become due and owing pursuant to this Contract; (b) institute suit against Buyer to enforce performance by Buyer of the covenants, terms and provisions of this Contract; (c) require Buyer to assemble the Equipment and make the Equipment available to Seller at a place to be designated by Seller; (d) enter upon any premises, including the Equipment Location, where any of the Equipment is located and repossess any or all of the Equipment; (e) sell any or all of the Equipment at public or private sale; (f) lease, license, or otherwise dispose of any or all of the Equipment; (g) recover from Buyer the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, and reasonable attorneys' fees and expenses incurred by Seller; and (h) exercise any other right or remedy which may be available to it. If Seller accelerates the entire unpaid balance of this Contract, the entire unpaid balance shall bear interest from the date of acceleration at the lesser of: (a) two percent (2%) per month; or (b) the highest lawful rate. The exercise of any remedy granted herein shall not constitute an election of remedies, and all remedies set forth herein are cumulative and are in addition to other any other remedy

available to Seller at law or in equity. To the extent permitted by law, Buyer hereby waives any duty which may be imposed upon Seller in connection with the exercise of any right or remedy by Seller. If any notification of the intended sale, lease or other disposition of any of the Equipment is required by law, such notification shall be deemed sufficient if the same is mailed to Buyer ten (10) days prior to such intended sale, leasing or other disposition. Seller shall have no duty to clean, repair or otherwise prepare the Equipment for any disposition.

Buyer hereby assigns to Seller, and upon an Assignment, Seller hereby assigns to Finance Company, Buyer's rights to any supplier's or manufacturer's warranty or agreement with respect to the Equipment, to the extent that such warranty or agreement is assignable. Each of Seller's rights and remedies under this Section 10 shall be exercisable by Finance Company in the place and stead of Seller and in the name of Seller or in its own name pursuant to Section 4 hereof and regardless of whether an Assignment has occurred.

**11. PERFORMANCE BY FINANCE COMPANY.** If Buyer fails to make any payment or to perform any obligation imposed on Buyer by this Contract, Finance Company, pursuant to its role as servicer of this Contract, may make such payment or perform such obligation. The amount of any such payment, including reasonable attorneys' fees, shall be immediately due and payable to Finance Company. Such sums shall bear interest at: (a) two percent (2%) per month; or (b) the highest lawful rate, whichever is less, from the date that such payment is made or such expense is incurred by Finance Company. This authorization shall not impose upon Finance Company any duty to perform any act which Buyer has failed to perform nor shall Finance Company's payment or performance of any such obligation be a waiver of Buyer's default.

**12. USURY.** Notwithstanding any provision contained herein to the contrary, in no event shall interest or any other charge or fee accrue or be payable in excess of the highest lawful rate. If, from any circumstance whatsoever, amounts payable hereunder exceed the limit prescribed by law, such amounts shall be reduced to the maximum amount permitted by applicable law, and if from any circumstance the holder hereof shall ever receive as interest or other fees an amount which would exceed the highest lawful rate or amount, such excess shall be applied to the reduction of the unpaid balance due hereunder and not to the payment of interest or such fees, or if such excess exceeds the unpaid balance, such excess shall be refunded to Buyer. The Finance Charge is calculated on the number of days elapsed and a year consisting of three hundred sixty (360) days.

**13. BENEFIT.** Except as otherwise provided herein, this Contract shall be binding upon Seller, Buyer and their respective heirs, successors and permitted assigns. If Buyer is more than one person or entity, all obligations imposed upon Buyer are joint and several. Finance Company is an express third party beneficiary to this Contract and any related documents or instruments and all of the provisions hereof and thereof.

**14. SEVERABILITY.** Whenever possible, each provision of this Contract shall be interpreted in such manner as to be effective and valid, but if any provision shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Contract.

**15. ORIGINAL / TRANSMITTAL.** This Contract and all other related documents may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument; provided, however, that to the extent that this Contract would constitute chattel paper, as such term is defined for purpose of the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest herein or therein may be created or perfected through the transfer or possession of this Contract in and of itself without the transfer or possession, as applicable, of the original counterpart of such Contract identified as the document or record (as applicable) marked "Original." This Contract may be authenticated by a party and transmitted by facsimile or electronic media and when so transmitted shall be deemed an executed original of this Contract.

**16. CONSENT TO ELECTRONIC COMMUNICATIONS.** Buyer agrees that any "Communications" (as defined herein) directed to Buyer by Seller, Finance Company, Finance Company's parent association, or any subsidiary, affiliate, or agent of Finance Company or Finance Company's parent association (collectively, the "Association"), may be provided in electronic form or transmitted by electronic means. As used herein, "Communications" means all notices, disclosures, documents, or other communications given by the Association to Buyer, including, without limitation, all shareholder communications and any disclosures, notices, or communications relating to this Contract or any transaction between Buyer and the Association, but expressly excluding any notice required by applicable law to be provided in paper form. Buyer acknowledges that electronic Communications entail risks (including the risk of interception by a third party) and Buyer hereby releases the Association from all liability

App #: 2568576;   CIF #: ▮▮▮▮   Contract #: ▮▮57      267CI      Legal Doc. Date: November 17, 2022
FORM 8422, Retail Installment Contract and Security Agreement      Page 5 of 6
DocuSign Envelope ID: A8B21B14-13D4-4D38-9B81-9264B045F01F

THIS IS A COPY
This Authoritative Copy of this record is held at na2.docusign.

relating to the electronic provision or transmission of any and all Communications. Buyer agrees to provide Finance Company upon request with the e-mail address or addresses of Buyer and to notify Finance Company within ten (10) days if Buyer changes its e-mail address or addresses. Any Communication sent by e-mail will be deemed received when sent to the last e-mail address or addresses of Buyer known by Finance Company. Any Communication digitally published by the Association on an Internet website will be deemed received when the Association has both published the Communication and notified Buyer at its last e-mail address or addresses known by Finance Company that the Communication has been published. Transmission of this Contract and each document executed in connection herewith (collectively, the "Documents") as an "electronic record" containing Buyer's "electronic signature," as those terms are defined under applicable federal and state laws, or facsimile transmission of any Document containing a facsimile of Buyer's signature, shall be as effective, enforceable and valid as if a paper version of such Document were delivered containing such original written signature. The parties intend that the electronic method used as provided herein reliably establishes the identity of Seller or Finance Company as a holder in due course and agree that each Document produced by such electronic method shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document and shall be effective as a transferable record; and to the extent, if any, that any Document constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), no security interest in such Document may be created through the transfer or possession of any counterpart or copy thereof, other than the Document produced by such electronic method. Buyer agrees not to raise as a defense to the enforcement of any Document that Buyer executed such Document by electronic or digital means or used facsimile or other electronic means to transmit its signature on such Document. At any time, Buyer may request a paper copy of any Document or other record Seller or Finance Company made available to Buyer electronically. Buyer may revoke the consent to receive electronic Communications contained in this paragraph by sending thirty (30) days' prior written notice of such revocation, signed by Buyer, to Finance Company by certified mail, return receipt requested. In the event of any conflict between the terms of this paragraph and the terms of any other agreement entered into by Buyer and the Association regarding electronic signatures or communications, then as to such other agreement, the terms of such other agreement shall control as to such electronic signatures or communications.

17. **USA PATRIOT ACT**. Pursuant to the USA Patriot Act, Seller or Finance Company shall obtain, verify and record information that identifies the Buyer. Seller or Finance Company has asked or will ask for Buyer's name, address, date of birth, taxpayer identification number and such other information as may be necessary for Seller or Finance Company to identify Buyer in accordance with the USA Patriot Act.

18. **MISCELLANEOUS.** This Contract constitutes the entire understanding and agreement between Seller and Buyer, and there are no understandings or agreements between the parties, oral or written, which are not set forth herein. No amendment or modification entered into by Seller or Buyer shall be effective unless pursuant to a written instrument signed by Seller (except as provided in Section 3 hereof), Buyer and consented to in writing by Finance Company. Any litigation arising out of or related to this Contract shall be commenced solely in the state and federal courts sitting in Douglas County, Nebraska, except that Seller or Finance Company, as the case may be, may, in its sole discretion, institute legal action in any jurisdiction in which Buyer, any guarantor or the Equipment is located. For South Dakota Contracts only, any improprieties in making this Contract or in financing practices may be referred to the South Dakota Division of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or 605-773-3421.

# EXHIBIT 8

 

U220245887237



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U220245887237 |
| Date Filed: 11/21/2022 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 |
| | GLENDALE, CA 912099071 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| BIKRAM SINGH | 18144 ROAD 20<br>MADERA, CA 93637 |
| FRIENDS FARM INC. | 18144 ROAD 20<br>MADERA, CA 93637 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| FARM CREDIT SERVICES OF AMERICA, PCA | PO BOX 2409<br>OMAHA, NE 68103 |
| MIDLAND TRACTOR COMPANY | 1901 W CLEVELAND AVE<br>PO BOX 1227<br>MADERA, CA 93639 |

Indicate how documentation of Collateral is provided:
  Entered as Text

Description:
  *Jackrabbit CO-JACK Rodent Control System CJ391 T.G. Schmeiser VBL-13R Blade VB3063-21 T.G. Schmeiser VBL-13R Blade VB3064-21 T.G. Schmeiser VBL-16R Blade VB9931-22*

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
  Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
  90020024

B1266-5498 11/21/2022 4:16 PM Received by California Secretary of State

# EXHIBIT 9

RECEIVED NOT FILED
Superior Court of California,
County of Madera
05/08/2024 at 04:53:51 PM
By Tiffany Velazquez, Deputy Clerk

**FILED**
Superior Court of California,
County of Madera
**07/11/2024**

Adrienne Calip / Clerk of Court
By: Sabrina Vargas, Deputy Clerk

Electronically Submitted on 05/8/24 4:53 PM

1  Michael J. Gomez, (State Bar No. 251571)
   mgomez@frandzel.com
2  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   516 West Shaw, Suite 200
3  Fresno, California 93705-2515
   Telephone: (559) 221-2591
4  Facsimile: (559) 221-2660

5  Attorneys for Plaintiff
   FARM CREDIT SERVICES OF AMERICA,
6  PCA

7

8

9                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                       **COUNTY OF MADERA**
10

11

12  FARM CREDIT SERVICES OF AMERICA,          Case No. MCV090863
   PCA,
13                                             **JUDGMENT BY COURT AFTER**
           Plaintiff,          **DEFAULT**
14
      v.
15
   NIA AG SOLUTIONS, a California
16  corporation; ARJUN FARMS, INC. a          Filed:      12/04/23
   California corporation; FRIENDS FARM       Trial Date: Not Set
17  INC. a California corporation; BIKRAM
   SINGH, an individual; and DOES 1 through
18  80, inclusive,

19            Defendants.

20

21          This cause came to be heard before the Honorable Brian W. Enos, judge presiding in

22  Department 45, by submission of the attorneys of record for Plaintiff FARM CREDIT SERVICES

23  OF AMERICA, PCA ("Plaintiff"), Frandzel Robins Bloom & Csato, L.C., and it appearing that

24  Defendants NIA AG SOLUTIONS, a California corporation, ARJUN FARMS, INC., a California

25  corporation, FRIENDS FARM INC., a California corporation, and BIKRAM SINGH, an

26  individual ("Singh") ("collectively referred to herein as Defendants"), having been regularly

27  served with process, having failed to appear and answer the Plaintiff's Complaint filed herein on

28  December 4, 2023, and the default of the Defendants having been entered and evidence having

5177252v1 | 101023-0031
JUDGMENT BY COURT AFTER DEFAULT

1 | been introduced by Plaintiff and been considered by the Court:

2 |     **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff FARM

3 | CREDIT SERVICES OF AMERICA, PCA, shall have Judgment on its First and Fourth Causes of

4 | Action against Defendants NIA AG SOLUTIONS, a California corporation, FRIENDS FARM

5 | INC., a California corporation, and BIKRAM SINGH in the sum of $1,924,593.62, which

6 | includes $1,641,396.29 of principal, interest of $256,431.71 as of May 6, 2024, late fees of

7 | $7,523.46, attorneys' fees of $18,103.96, and costs for filing and serving the summons and

8 | complaint of $1,138.20. Interest continues to accrue from May 6, 2024, until the time this

9 | Judgment is entered, at the rate of $683.92 per day

10 |     **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff FARM

11 | CREDIT SERVICES OF AMERICA, PCA, shall have Judgment on its First Cause of Action

12 | against Defendant ARJUN FARMS, INC., a California corporation in the sum of $1,235,211.56,

13 | which includes $1,060,390.41 of principal, interest of $156,601.99, late fees of $4,787.06,

14 | attorneys' fees of $12,293.90, and costs for filing and serving the summons and complaint of

15 | $1,138.20. Interest continues to accrue from May 6, 2024, until the time this Judgment is entered,

16 | at the rate of $441.83 per day

17 |     **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Judgment

18 | amounts shall accrue interest commencing on the date of the entry of judgment at the rate of 10%

19 | per annum as provided by Code of Civil Procedure section 685.010(a).

20 |     **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff FARM

21 | CREDIT SERVICES OF AMERICA, PCA, shall be entitled to its attorney's fees and costs on a

22 | post-judgment basis for enforcing this Judgment

23 |     **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff FARM

24 | CREDIT SERVICES OF AMERICA, PCA, shall have Judgment on its Second Cause of Action

25 | against Defendants NIA AG SOLUTIONS a California corporation, ARJUN FARMS, INC., a

26 | California corporation, FRIENDS FARM INC., a California corporation, and BIKRAM SINGH,

27 | an individual, for Claim and Delivery and for immediate possession with respect to:

28 |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
516 WEST SHAW, SUITE 200
FRESNO, CALIFORNIA 93705-2515
(559) 221-2591

5177252v1 101023-0031

2

| Make | Model | Description | Serial No. |
|------|-------|-------------|------------|
| Rears | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8919 |
| Rears | GB38R 1200 GALLON | Orchard Sprayer: Pull-Type | 8921 |
| John Deere | 5125ML | Tractor | 1LV5125MVNM702911 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8636 |
| COE | S7R | Tree Shaker | S7R+-21-777 |
| COE | S7R | Tree Shaker | S7R+-21-778 |
| Flory | V62 | Nut Sweeper: Self-Propelled | 8637 |
| John Deere | 5125ML | Tractor | 1LV5125MLNM702779 |
| Key Dollar | PF9 | Cab | 9357 |
| Key Dollar | PF9 | Cab | 9359 |
| Flory | 860XL | Nut Harvester: Pull-Type | 8692 |
| Jackrabbit | WEDGE 10 | Reservoir Cart | 1643 |
| Exact | E355 | Conditioner | 9383 |

(collectively, the "Contract 1 Collateral")

Should Plaintiff FARM CREDIT SERVICES OF AMERICA, PCA, recover the Contract 1 Collateral and thereafter sell the Contract 1 Collateral, the net proceeds from said sale, after deduction of reasonable expenses of retaking, holding, preparing for sale, selling and the like, shall be applied to reduce the amount of the Judgment herein and Plaintiff shall file a Partial Satisfaction of Judgment giving credit to Defendants NIA AG SOLUTIONS, a California corporation, ARJUN FARMS, INC., a California corporation, FRIENDS FARM INC., a California corporation, and BIKRAM SINGH, an individual, for the proceeds from the sale of the Contract 1 Collateral.

All post-judgment sums received, if any, will be credited toward amounts owing by the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
516 WEST SHAW, SUITE 200
FRESNO, CALIFORNIA 93705-2515
(559) 221-2591

1   Defendants listed above so there will be no double-recovery of the Judgment once entered.

2        **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff FARM

3   CREDIT SERVICES OF AMERICA, PCA, shall have Judgment on its Fourth Cause of Action

4   against Defendants NIA AG SOLUTIONS, a California corporation, FRIENDS FARM INC., a

5   California corporation, and BIKRAM SINGH, an individual, for Claim and Delivery and for

6   immediate possession with respect to:

| Make | Model | Description | Serial No. |
|------|-------|-------------|-----------|
| Jackrabbit | 36/36 STOCK PILING | Elevator | YD82 |
| Jackrabbit | 180 | Shuttle | JRT1484 |
| Jackrabbit | 180 | Shuttle | JRT15000 |
| Jackrabbit | 180 | Shuttle | JRT1495 |

13   (collectively, the "Contract 2 Collateral").

14        Should Plaintiff FARM CREDIT SERVICES OF AMERICA, PCA, recover the Contract 2

15   Collateral and thereafter sell the Contract 2 Collateral, the net proceeds from said sale, after

16   deduction of reasonable expenses of retaking, holding, preparing for sale, selling and the like, shall

17   be applied to reduce the amount of the Judgment herein and Plaintiff shall file a Partial

18   Satisfaction of Judgment giving credit to Defendants NIA AG SOLUTIONS, a California

19   corporation, FRIENDS FARM INC., a California corporation, and BIKRAM SINGH, an

20   individual, for the proceeds from the sale of the Contract 2 Collateral.

21        All post-judgment sums received, if any, will be credited toward amounts owing by the

22   Defendants listed above so there will be no double-recovery of the Judgment once entered.

24        **THE CLERK IS ORDERED TO ENTER THE JUDGMENT.**

26   DATED: 7/4/24

                          *Brian W Enos*
27                        HONORABLE BRIAN W. ENOS
                       JUDGE OF THE SUPERIOR COURT

FRANDZEL ROBINS BLOOM & CSATO, L.C.
516 WEST SHAW, SUITE 200
FRESNO, CALIFORNIA 93705-2515
(559) 221-2591

5177252v1 | 101023-0031            4